(173 App. Div. 773)
PEOPLE ex rel. BRIDGES v. ADAMSON, Fire Com'r.

(Supreme Court, Appellate Division, Second Department. June 29, 1916.)

MUNICIPAL CORPORATIONS ☞198(1)—POLICE OFFICERS—COMPULSORY RETIREMENT—REINSTATEMENT—STATUTE.

Under Greater New York Charter (Laws 1897, c. 378, as amended by Laws 1901, c. 466) § 790, authorizing the fire commissioner to retire from all service in the fire department or to relieve from service at fires any officer or member of the uniformed force, in case of a total permanent disability caused in or induced by the actual performance of duty, a partial permanent disability caused by the active discharge of duty, or a partial permanent disability caused in or induced by the actual performance of duty, the intention was to create a provision in favor of fireman injured in the active performance of duty, in distinction to those whose injury was caused in or induced by the actual performance of duty, so that an officer in the uniformed force of the fire department, injured in the active discharge of his duty at a fire and permanently disabled, but disqualified only from performing active duty in the uniformed force at fires, was entitled to employment at his regular salary in some position not requiring active service as a fireman.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 540, 545; Dec. Dig. ☞198(1).]

Appeal from Special Term, Kings County.

Mandamus by the People of the state of New York, on relation of James Bridges, against Robert Adamson, as Fire Commissioner of the City of New York. From an order denying his application, relator appeals. Order reversed, and final order rendered, as a matter of law and not of discretion, awarding a peremptory writ of mandamus requiring the respondent forthwith to reinstate the relator as a captain in the fire department with full pay, and to assign and employ relator in some position in the fire department of the city of New York not requiring active service as a fireman.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Robert H. Wilson, of Brooklyn, for appellant.

Terence Farley, of New York City (Elliot S. Benedict, of New York City, on the brief), for respondent.

STAPLETON, J. The relator, an officer in the uniformed force of the fire department of the city of New York, was, on August 1, 1915, compulsorily retired on a pension amounting to one-half the annual salary fixed for the office he held. He became a member of the force on November 16, 1891. He was injured on September 10, 1906, during his active service, caused by the active discharge of duty. He was permanently disabled by the injuries, but disqualified only from performing active duty in the uniformed force; that is, active service at fires. He received full pay after his injury and before his retirement for performing service in the fire department not requiring active service at fires. The certificate of the board of medical offi-

cers of the first department, upon which the fire commissioner acted, and the order of the commissioner, reads:

> "Headquarters Fire Department of the City of New York,
> "Office of Medical Officers,
>
> "New York, March 12, 1915.
>
> "To the Honorable Robert Adamson, Commissioner—Sir:
>
> "In compliance with orders received under date of March 9, 1915, we have the honor to report that we have examined Captain James Bridges of H. & L. Co. No. 113, with reference to his physical and mental qualifications for the performance of his duties, and that we find him suffering from sterno clavicular dislocation (right), with impairment of function of shoulder and arm (right) and defective vision.
>
> "We therefore hereby certify that Captain James Bridges of H. & L. Co. 113, is totally permanently physically disqualified for the performance of his duties as a member of the uniformed force of this department, and that such total permanent physical disability was caused in or induced by the actual performance of the duties of his position.

| "Very respectfully, | J. E. Smith, M. D., Chief Medical Officer. |
|---|---|
| "William A. Long, | Frances M. Banta, |
| "Robert W. Hall, | L. J. Hunter, |
| "Walter G. Frey, | John J. White, |
| "William J. Tierney, | E. Benjamin Ramsdell, |

> "Medical Officers."

The record of his examination at the time of his appointment in the department is as follows:

> "Names, James Bridges; age, 45 years; residence, No. 239 Front street, Brooklyn, N. Y. Appointed November 16, 1891.
>
> "(Filing Fold.)
>
> "Headquarters Fire Department, Office of Medical Officers,
>
> "New York, March 12, 1915.
>
> "Report of Examination
>
> "Of Captain James Bridges of H. & L. Co. No. 113 as to his physical and mental qualifications for the performance of his duties.
>
> "(Indorsement Fold.)
>
> "Office Chief of Department,
>
> "New York, March 12, 1915.
>
> "The within report of the medical officers of the fire department relative to condition of Captain James Bridges of H. & L. Co. 113 is respectively forwarded, with the recommendation that he be retired from all service in the department.        John Kenlon, Chief of Department.
>
> "Headquarters Fire Department, Office of the Fire Commissioner,
>
> "N. Y., July 29, 1915.
>
> "Approved, and ordered that Captain James Bridges, H. & L. Company No. 113, borough of Brooklyn, be retired from all service in this department on an annual pension of $1,250.00, payable monthly, to take effect from 8 o'clock a. m., August 1st, 1915.        Robert Adamson, Fire Commissioner."

The material facts are thus recited, and they are undisputed. The relator contends he was unlawfully retired, that it was the duty of the defendant to refrain from retiring him upon this state of facts, and that the defendant should be required to perform that duty by a peremptory writ of mandamus. He applied for the writ. The Special Term made a final order denying his application, and from that order the appeal is taken.

Section 790 of the Greater New York Charter (chapter 378 of the Laws of 1897, as amended by chapter 466 of the Laws of 1901) is the statutory warrant of the fire commissioner's authority to retire the relator. It reads:

"Sec. 790. The fire commissioner shall have power to retire from all service in the said fire department, or to relieve from service at fires, any officer or member of the uniformed force of said department, who may, upon an examination by the medical officers, ordered by the said fire commissioner, be found to be disqualified, physically or mentally, for the performance of his duties; and the said officer or member so retired from service shall receive from said relief fund an annual allowance as pension in case of total disqualification for service, or as compensation for limited service in case of partial disability; in every case, the said fire commissioner is to determine the circumstances thereof, and said pension or allowance so allowed is to be in lieu of any salary received by such officer or member at the date of his being so relieved or retired from fire duty in said department, and the said department shall not be held liable for the payment of any claim or demand for services thereafter rendered, and the amount of such pension or allowance shall be determined upon the following conditions: In case of total permanent disability, at any time, caused in or induced by the actual performance of the duties of his position, or which may occur after ten years' active and continuous service in the said fire department, the amount of annual pension to be allowed shall be one-half of the annual compensation allowed such officer or member as salary at the date of his retirement from the service, or such less sum in proportion to the number of officers and members so retired as the condition of the fund will warrant. But should permanent disability caused by injuries received in the active discharge of his duties disqualify him only from performing active duty in the uniformed force, he shall be employed at the salary received when such disability occurred in some position in the department not requiring active service as a fireman. In case of total permanent disability not caused in or induced by the actual performance of the duties of his position, or which shall have occurred before the expiration of ten years' active and continuous service in the said fire department, the amount of annual pension to be allowed shall be one-third of the annual compensation allowed such officer or member as salary at the date of his retirement from the service, or in proportion to the number of officers and members so retired, as the condition of the fund will warrant. In case of partial permanent disability, caused in or induced by the actual performance of the duties of his position, or which may occur after ten years' active and continuous service in the said fire department, the officer or member so disabled shall be relieved from active service at fires, but shall remain a member of the uniformed service, subject to the rules governing said force, and to the performance of such light duties as the medical officer of the said fire department may certify him to be qualified to perform; and the annual allowance to be paid such member or officer shall be one-half of the annual compensation allowed as salary at the date of his being so relieved, or such less sum, in proportion to the number of officers and members so retired, as the condition of the fund will warrant. In case of partial disability, not caused or induced by the actual performance of the duties of his position, or which may occur before ten years' active and continuous service in the said fire department, the officer or member so disabled shall be relieved from active service at fires, but shall remain a member of the uniformed force, subject to the rules governing said force, and to the performance of such light duties as the medical officer of said department may certify him to be qualified to perform, and the annual allowance to be paid to such officer or member shall not exceed one-third of the annual compensation allowed as salary at the date of his being so relieved, or such less sum as the fire commissioner may, in his discretion, determine, or as the condition of the fund will warrant. Any officer or member of the uniformed force of the said fire department of the city of New York, who has or shall have performed duty therein for a period of twenty years or upwards, shall upon his own

application, in writing, or upon a certificate of the board of medical officers showing that such member is permanently disabled, physically or mentally, so as to be unfit for duty, be retired and dismissed from said force and service, and placed on the roll of the relief or pension fund, and awarded and granted, to be paid from the said relief or pension fund, an annual pension during his lifetime of a sum not less than one-half the full salary or compensation of such member so retired. The pensions granted under this section shall be for the natural life of the pensioner, and shall not be revoked, repealed or diminished; provided, however, that no member of either of the uniformed fire departments by this act consolidated, having a right to retire on pension at the time this act takes effect, shall be deprived of such right by reason of his remaining a member of said fire department, or of anything in this act contained."

Did the defendant act within the powers conferred by that statute, properly interpreted? This is the sole question presented by the appeal. We think he did not. Among other provisions for the benefit of firemen, members of the uniformed force, the section quoted contains these:

(a) In case of total permanent disability caused in or induced by the actual performance of duty, the disabled man shall be retired on a pension equal to one-half his salary at the date of retirement.

(b) In case of partial permanent disability caused by the active discharge of duty, disqualifying him only from performing active duty in the uniformed force, he shall be employed at his regular salary in some position not requiring active service as a fireman.

(c) In case of partial permanent disability caused in or induced by the actual performance of his duties, he shall be relieved from active service at fires, given light work and a compensation equal to half his salary.

We see, therefore, that (a) provides for a total permanent disability caused in or induced by the actual performance of duty; (b) provides for a partial permanent disability caused by the active discharge of duty; and (c) for a partial permanent disability caused in or induced by the actual performance of duty. The provision in behalf of firemen receiving injuries incurred in the active discharge of duty was newly inserted in the charter; the other two provisions having been carried from Consolidation Act (Laws 1882, c. 410).

The intention undoubtedly was to create a provision in favor of firemen injured in the active performance of duty in contradistinction to those whose injury was caused in or induced by the actual performance of duty. If "actual performance" and "active discharge" were intended to mean the same thing, there would have been no necessity for the amendment. We clearly see the distinction. A fireman might be injured in the actual performance of duty without ever leaving the fire house, while an injury received in the active discharge of duty would be incurred while a fireman was actively engaged in fire-fighting. We think light is thrown on the intention of the Legislature in the use of the term "active discharge" by the frequent use of the phrases "active service at fires," "active service as a fireman," and "active duty." It may also be well to note that provisions (a) and (c) provide for cases where the disability is "caused in or induced by," while in provision (b) "induced by" is omitted. This confirms us in the belief

that provision (b) was enacted for the benefit of those only whose disability was the direct, immediate result of active fire duty. The relator having been injured in the active discharge of his duty at a fire, he is entitled to the benefit of provision (b).

It is argued the relator could in any event be retired under the 20-year provision. The question whether a fireman, disabled in the active discharge of his duty, but able to perform light duty, is exempt from the provision authorizing compulsory retirement after 20 years' service is not before us. The relator was not retired under the 20-year provision. He was retired under a provision which in his case was inoperative. The certificate of the board of medical officers that the relator is "totally permanently physically disqualified for the performance of his duties as a member of the uniformed force" is not a certificate that he is totally permanently physically disqualified for the performance of duty "in some position in the department not requiring active service as a fireman." The commissioner made the determination in accordance with the certificate of the board of medical officers only.

The order should be reversed, with $50 costs and disbursements, and a final order granted, as a matter of law and not of discretion, awarding a peremptory writ of mandamus requiring the respondent forthwith to reinstate the relator as a captain in said fire department, with full pay, and forthwith to assign and employ the relator in some position in the fire department of the city of New York, not requiring active service as a fireman. All concur.